UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARY CATHERINE McGEEVER, | ) | Case No. 1:18CV0477 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | MEMORANDUM AND ORDER |
| | ) | |

Plaintiff Mary Catherine McGeever ("McGeever" or "claimant") challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying her applications for a period of disability ("POD") and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, *et seq.* ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). The issue before the court is whether the final decision of the Commissioner is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Commissioner's final decision is affirmed.

I. PROCEDURAL HISTORY

On March 10, 2015, McGeever filed an application for a POD and DIB, alleging disability beginning February 23, 2015. (R. 10, Transcript ("tr."), at 11, 338-344, 360-363, 364-373.) McGeever's application was denied initially and upon reconsideration. (R. 10, tr., at 11, 263-272, 273-282, 283-285.) Thereafter, McGeever filed a request for a hearing. (R. 10, tr., at 299-300.)

An Administrative Law Judge ("the ALJ") held the hearing on February 15, 2017. (R. 10, tr., at 236-262.) McGeever appeared at the hearing, was represented by counsel, and testified. (*Id.* at 238, 240-253.) A vocational expert ("VE") also attended the hearing and provided testimony. (*Id.* at 238, 253-257.)

On June 15, 2017, the ALJ issued her decision, applying the standard five-step sequential analysis to determine whether McGeever was disabled. (R. 10, tr., at 11-25; *see generally* 20 C.F.R. § 404.1520(a).) Based on her review, the ALJ concluded McGeever was not disabled. *Id.* at 24. The Appeals Council denied McGeever's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (R. 10, tr., at 1-4.) On March 1, 2018, McGeever filed a complaint challenging the Commissioner's final decision, pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case.

McGeever raises four issues, challenging the ALJ's: Step Three analysis; evaluation of opinion evidence; residual functional capacity assessment; and, finding regarding her fibromyalgia. (R. 14, PageID #: 1231.)

## II. PERSONAL BACKGROUND INFORMATION

McGeever was born in 1966, and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date, but subsequently changed age category to closely approaching advanced age. (R. 10, tr., at 23, 338, 360.) McGeever has a tenth-grade education and is able to communicate in English. (R. 10, tr., at 240, 364, 366.) She had past relevant work as a home health aide. (R. 10, tr., at 23, 254.)

### III.  RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in McGeever's brief alleging error by the ALJ.  McGeever applied for DIB benefits on March 10, 2015, alleging disability beginning February 23, 2015.  (R. 10, tr., at 11, 338-344.)  McGeever listed her physical or mental conditions that limit her ability to work as:  "degenerative disc disease, lumbosacral spondylosis, spinal stenosis, [peripheral] neuropathy, [cervicalgia], osteoarthritis both knees, hypertension."  (R. 10, tr., at 365.)

State agency medical consultant Theresa March, D.O., completed a physical residual functional capacity assessment for McGeever on April 23, 2015.  (R. 10, tr., at 267-269.)  Dr. March assessed a range of light exertion, with the ability to stand or walk for a total of six hours, and to sit for about six hours, of an 8-hour workday.  (R. 10, tr., at 267-268.)  She can never climb ladders, ropes, or scaffolds.  *Id.* at 268. She can frequently stoop, kneel or crouch, and can occasionally crawl.  *Id.*  McGeever's capacity to reach overhead with either arm is limited to frequently. *Id.* at 269.

On referral, McGeever presented to neurosurgeon Tiffany Grace Perry, M.D., on May 21, 2015.  (R. 10, tr., at 819-826.)  The claimant reported a history of posterior neck pain that radiates down her right arm to her fingers.  *Id.* at 819.  She has intermittent numbness and weakness in her right arm.  *Id.*  Her symptoms were aggravated by lifting and pulling, and rotating her head to the left.  *Id.*  Dr. Perry reviewed x-rays and MRIs of the cervical spine, and noted McGeever had symptoms of cervical spondylotic myelopathy,

---

[1]  The summary of relevant medical evidence is not intended to be exhaustive.  It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

specifically difficulty with balance, weakness in her arms, difficulty holding onto things. *Id.* at 821. Dr. Perry also diagnosed cervical radiculopathy. *Id.* at 822.

Dr. Perry ordered a CT scan of the cervical spine, and scheduled a return visit for a pre-operative discussion. (R. 10, tr., at 821.) The doctor noted that, based on the MRI, she would recommend a posterior decompression and fusion, and indicated that her disc herniation at C4/5 and C5/6 appeared to be calcified. *Id.*

McGeever returned to Dr. Perry on May 28, 2015, to discuss possible surgery, and to review the results of her recent CT and x-ray scans of the cervical spine. (R. 10, tr., at 829-833.) The claimant reported recent cramping and muscle spasms in her right arm, difficulty writing and holding things, along with shooting pains to her right shoulder. *Id.* at 829. The CT images showed collapse of C4/5, C5/6, and C6/7 disc spaces, calcification of PLL (posterior longitudinal ligament) and disc posteriority at C5/6, loss of lordosis, and a congenitally narrowed canal. *Id.* at 830. Based on the CT results, Dr. Perry diagnosed cervical myelopathy, right arm radiculopathy, and axial neck pain. *Id.* Dr. Perry recommended posterior decompression and fusion of C4-C7, and McGeever consented to surgery. *Id.*

Dr. Perry performed the surgery on June 19, 2015. (R. 10, tr., at 764-767.) It included a posterior C4-5 laminectomy, posterior C3-C6 fusion instrumentation, and local autograft Stryker implant, with no complications. *Id.* at 764, 766. The day after surgery an occupational therapist assessed claimant's rehabilitation potential as good. *Id.* at 768. A physical therapist evaluated claimant's rehabilitation potential as excellent. *Id.* at 771-772.

State agency medical consultant Abraham Mikalov, M.D., completed a physical RFC assessment for McGeever on reconsideration on August 3, 2015. (R. 10, tr., at 277-279.)

4

Dr. Mikalov opined that McGeever was limited in her capacity to push and/or pull with her right hand and arm, due to brachial neuritis. *Id.* at 277. Otherwise, Dr. Mikalov adopted the identical limitations identified earlier by Dr. March. *Id.* at 277-279.

On December 14, 2015, Physical Therapist Marie Soha completed a functional capacity evaluation and assessment for disability. (R 8, tr., at 916-924.) McGeever reported that her chief complaints were posterior/bilateral neck pain, lower back and bilateral knee pain. *Id.* at 916. The claimant was able to tolerate sitting for 55 minutes before the therapist asked her to change position. *Id.* The claimant reported pain after standing for eight minutes, and after walking for 2 1/2 minutes. *Id.* at 916, 921. McGeever demonstrated a poor tolerance for climbing stairs. *Id.* at 916. The therapist assessed that she could bend or reach occasionally, but was unable to squat. *Id.* at 917. She had poor fine motor and gross motor skills. *Id.* PT Soha assessed that McGeever has severe restrictions in mobility of her cervical spine and left arm. *Id.* at 917, 921. The therapist observed that claimant was "overall deconditioned," and would benefit from an aquatic therapy program. *Id.* at 917.

Based on McGeever's responses to the McGill Pain Questionnaire, PT Soha noted that claimant's high score "may indicate an exaggeration of symptoms," but this should be considered with her other indicators of pain. (R. 8, tr., at 920.) The claimant also completed a Pain Disability Index, a self-assessment of her perceived disability. *Id.* McGeever's scores indicated a significant perception of perceived disability, highest in the areas of occupation and recreation, and least in the areas of life-support activity, social activity, and self-care. *Id.* Overall, the therapist assessed that the reliability of the

claimant's reports was good, with the exception that her high pain behaviors may be indication of poor reliability.  *Id.* at 924.

On December 22, 2015, Kelly Neiderhouse, Clinical Nurse Practitioner ("CNP"), prepared a medical source statement on McGeever's physical capacity.  (R. 10, tr., at 927-928.)  CNP Neiderhouse opined that McGeever's impairments limited the amount that she can lift and carry to a maximum of 15 pounds, 11 pounds occasionally, and 7 pounds frequently. *Id.* at 927.  The medical findings supporting this assessment were indicated as "neck pain, cervical [vertebral] fusion, brachial neuritis, postlaminectomy syndrome, chronic post-op pain, chronic pain syndrome, bilateral knee pain [and] fibromyalgia." *Id.* CNP Neiderhouse opined that McGeever's standing and walking were affected by her impairments, and she was limited to standing or walking "8 min. total at a time" during an eight-hour workday. *Id.*  Neiderhouse indicated that sitting was not affected by claimant's impairments, yet she can only sit 55 minutes total during a workday. *Id.*

CNP Neiderhouse indicated that McGeever can occasionally climb, balance, or stoop, but rarely crouch.  (R. 10, tr., at 927.)  She can occasionally reach, push or pull, and perform fine and gross manipulation. *Id.* at 928.  CNP Neiderhouse opined that McGeever would need environmental restrictions for heights and moving machinery. *Id.*  Neiderhouse marked that a TENS Unit had been prescribed for the claimant. *Id.*  McGeever would need to be able to alternate positions between sitting, standing, and walking at will, but would not need to elevate her legs. *Id.*  Neiderhouse indicated that McGeever experiences moderate pain that interferes with concentration, can take her off task, and can cause absenteeism. *Id.*  She also noted that claimant would require additional unscheduled rest

periods during the work day, without specifying how much additional rest time might be required. *Id.*

At an October 10, 2016, follow-up visit with Laura Goldberg, M.D., for osteoarthritis of the knee, McGeever reported severe pain in her right knee. (R. 10, tr., at 998.) McGeever indicated that she had a cortisone injection in June 2016 for both knees that was effective for almost three months. *Id.* Dr. Goldberg administered a cortisone injection for her right knee. *Id.* at 999.

McGeever returned to Dr. Goldberg on November 10, 2016, complaining of osteoarthritis in her left knee, commenting that her right knee hurt but was tolerable. (R. 10, tr., at 1061.) Dr. Goldberg administered a cortisone injection for her left knee. *Id.* at 1062.

Later that month, on November 29, 2016, McGeever presented to Giselle S. Velez, M.D., for a preoperative evaluation. (R. 10, tr., at 1081-1091.) Dr. Velez indicated that claimant had previously undergone posterior cervical decompression and fusion, but continued to report persistent balance and ambulation problems, along with neck pain and stiffness. *Id.* at 1082. Dr. Velez stated that a CT scan of the cervical spine in September showed: "Postoperative changes following dorsal decompression and dorsal stabilization procedure with mild dorsal bony fusion. Mild cervical canal stenosis which is most prominent at C5-6 and C6-7. Multilevel bony foraminal narrowing." *Id.* McGeever was scheduled for a revision cervical decompression C6-7 with extension fusion T1. *Id.* at 1081-1082. Dr. Velez indicated that McGeever was able to perform the following physical activities: moderate work around the house such as vacuuming, sweeping floors, or

carrying in groceries; climb a flight of stairs or walk up a hill; but her activity was limited by bilateral knee arthritis and balance issues.  (R. 10, tr., at 1082.)

Thomas Mroz, M.D., performed the surgery on December 5, 2016, which included a revision cervical fusion with extension of fusion C3-T1, lateral mass screws C7, pedicle screws T1, decompression C6-7, and morselized bone autograft.  (R. 10, tr., at 1114-1116.) Before her discharge from the hospital, McGeever received physical therapy and occupational therapy evaluations.  *Id.* at 1107-1109, 1110-1113.  Both the physical therapist and the occupational therapist assessed her rehabilitation potential as excellent.  *Id.* at 1107, 1110.


## IV.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in her June 15, 2017, decision:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2017.

2.  The claimant has not engaged in substantial gainful activity since February 23, 2015, the alleged onset date (20 C.F.R. 404.1571 *et seq.*).

3.  The claimant has the following severe impairments:  osteoarthritis and allied disorders, obesity, degenerative disc disease, peripheral neuropathy, and dysfunction of major joints (20 C.F.R. 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in  20 CFR 404.1567(b) except the claimant may frequently push and pull with the right upper extremity; may frequently reach to head level, but

not overhead with the bilateral upper extremities; may never climb ladders, ropes or scaffolds; and may occasionally stoop, kneel, crouch, and crawl.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

7. The claimant was born on *** 1966, and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 C.F.R. 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 23, 2015, through the date of this decision (20 C.F.R. 404.1520(g)).

(R. 10, tr., at 13, 14, 23, 24.)


## V. DISABILITY STANDARD

A claimant is entitled to receive DIB or SSI benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination. *See* 20 C.F.R. § 404.1520(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).
>
> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the

record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VII.  ANALYSIS

McGeever presents the following legal issues for the court's review:

1.  Whether the ALJ erred at Step 3 by failing to provide meaningful analysis of the evidence of cervical degenerative disc disease in light of Listing 1.04.

2.  Whether the ALJ's evaluation of the opinion evidence is supported by substantial evidence.

3.  Whether the ALJ's assessment of residual functional capacity is supported by substantial evidence.

4.  Whether the ALJ erred in finding that the claimant's diagnosis of fibromyalgia failed to satisfy the requirements of SSR 12-2.

(R. 14, PageID #: 1231.)

A.  Listing 1.04(A)

McGeever asserts that the ALJ erred by failing to provide a meaningful analysis of the evidence of cervical degenerative disc disease at Step Three, and when determining that claimant did not meet the requirements of disability pursuant to Listing 1.04(A).[2]  (R. 14, PageID #: 1244, *see also* 1231.)  The claimant contends that the ALJ ignored the evidence that supports a finding that she meets the Listing.  *Id.* at 1244-1245.

At the second step of the sequential analysis, the claimant must show that she suffers from a severe medically determinable physical or mental impairment.  *Wilson*, 378 F.3d at 548 (citing 20 C.F.R. § 404.1520(a)(4)(ii)).  Where an ALJ determines at Step Two that a claimant has a severe physical impairment, the ALJ is generally required to:

> . . . consider the impairment at step three of the sequential analysis.  *See* [*Reynolds v. Comm'r of Soc. Sec.*, 424 Fed.Appx. 411, 415 (6th Cir. 2011)] (finding that the ALJ "must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment.").  In *Reynolds*, the court found that "by failing to analyze Reynolds' physical condition in relation to the Listed Impairments," the ALJ "skipped an entire step of the necessary analysis."  *Id.* at 416.  The *Reynolds* court found that "[t]he ALJ's error was not harmless, for the regulations indicate that, if a

[2]  The elements of Listing 1.04(A) are:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04.

person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary." *Id.* (citing 20 C.F.R. § 404.1520(a)(4)(iii)).

*Whitaker v. Berryhill*, No. 4:16CV38, 2017 WL 9251310, at *4 (E.D. Tenn. Aug. 11, 2017), *adopted by* 2017 WL 4030578 (E.D. Tenn. Sept. 13, 2017).

It is claimant's burden at Step Three to bring forth evidence to establish that her impairments meet or are medically equivalent to a listed impairment. An impairment or combination of impairments is considered medically equivalent to a listed impairment "if the symptoms, signs and laboratory findings as shown in medical evidence are at least equal in severity and duration to the listed impairments." *Ridge v. Barnhart*, 232 F.Supp.2d 775, 788 (N.D. Ohio 2002) (quoting *Land v. Secretary, HHS*, 814 F.2d 241, 245 (6th Cir. 1986) (per curiam)).[3]

Here, at Step Two, the ALJ determined that McGeever has, among her other impairments, the severe physical impairment of degenerative disc disease. (R. 10, tr., at 13.) At Step Three, the ALJ determined that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 10, tr., at 14.) The ALJ stated that she reviewed all the relevant listings for claimant's impairments, including "Listing 1.04, relating to disorders of the spine," and considering claimant's impairments both alone and in combination with other impairments, found there was "no medical evidence of the requirements of any listing being met or equaled." *Id.*

---

[3] Decisions addressing *Reynolds* and the sufficiency of the ALJ's analysis at Step Three have not established a uniform result. *See, e.g.*, *Makan v. Commissioner*, No. 5:12CV31, 2012 WL 7688148, at *3 n.26 (N.D. Ohio Dec. 26, 2012) (citing cases), report rejected on other grounds by 2013 WL 990824 (N.D. Ohio Mar. 7, 2013).

Although McGeever contends that the ALJ erred in her determination that claimant did not meet Listing 1.04(A) (R. 14, PageID #: 1244), the Commissioner asserts that the claimant never alleged that she met Listing 1.04 at any time during the administrative process. (R. 15-1, PageID #: 1276, citing R. 10, tr., at 257-261.) The Sixth Circuit has emphasized that the claimant has the burden of showing that her impairments are meet or are equivalent to a listed impairment. *Malone v. Commissioner,* No. 12-3028, 2012 WL 5974463, at *1 (6th Cir. Nov. 29, 2012) (per curiam) (citing *Foster v. Halter,* 279 F.3d 348, 354 (6th Cir. 2001)); *see generally Ridge,* 232 F.Supp.2d at 788. Where the claimant does not mention the particular Listing at the hearing before the ALJ, the Sixth Circuit has found that the ALJ is not obligated to discuss that particular Listing. *Wilson v. Commissioner,* No. 14-5968, 2015 WL 4385281, at *4 (6th Cir. July 16, 2015) (per curiam); *Malone,* 2012 WL 5974463, at *2 (claimant did not assert he had listed impairment at hearing, although represented by counsel); *see also Tate v. Berryhill,* No. 1:17CV1986, 2018 WL 3417308, at *13 n.5 (N.D. Ohio July 13, 2018); *Krull v. Commissioner,* No. 16-10575, 2016 WL 8451412, at *10 (E.D. Mich. Dec. 21, 2016), adopted by 2017 WL 840539 (E.D. Mich. Mar. 3, 2017).

Notwithstanding claimant's alleged failure to assert that she met Listing 1.04(A), the ALJ stated that she reviewed all the relevant listings for claimant's impairments, in particular, "Listing 1.02, which relates to major dysfunction of a joint, Listing 1.04, relating to disorders of the spine, and Listing 11.14, pertaining to peripheral neuropathy." (R. 10, tr., at 14.) Considering claimant's impairments both alone and in combination with other impairments, the ALJ found there was "no medical evidence of the requirements of any listing being met or equaled." *Id.*

The claimant argues that if the ALJ had performed a thorough analysis of the cervical degenerative disc disease evidence at Step Three, she would have found evidence to support meeting Listing 1.04(A).  (R. 14, PageID #: 1244, 1246.)  McGeever, however, "must point to specific evidence that demonstrates [she] reasonably could meet or equal every requirement of the listing." *Smith-Johnson v. Commissioner*, No. 13-1696, 2014 WL 4400999, at *6 (6th Cir. Sept. 8, 2014); *see also Malone*, 2012 WL 5974463, at *1.  "For a claimant to show that [her] impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Malone*, 2012 WL 5974463, at *1 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

The parties agree that to meet Listing 1.04(A), there must be evidence of nerve root compression.  (R. 14, PageID #: 1246; R. 15-1, PageID #: 1275; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04.)  The Commissioner asserts that diagnostic imaging did not demonstrate evidence of nerve-root compression.  (R. 15-1, PageID #: 1275.)  McGeever contends that MRI results evidence "compromise of a nerve root or the spinal cord."  (R. 14, PageID #: 1246, citing R. 10, tr., at 414-415, 918.)  The medical records cited by McGeever do not support her assertion.  She cites to a March 17, 2015, MRI of the cervical spine that was done for claimant's brachial neuritis or radiculitis.  (R. 10, tr., at 414.)  The MRI showed several bulging discs, and overall "[d]egenerative changes superimposed upon developmentally small spinal canal," but there is no mention of nerve-root compression. *Id.* at 414-415.  At a follow-up visit on March 23, 2015, Lynn Gaddis, CNP, summarized the MRI results, but made no mention of any nerve-root compression. *Id.* at 432-433.

McGeever also cites to a Functional Capacity Evaluation conducted by PT Soha on December 14, 2015. (R. 14, PageID #: 1246, citing R. 10, tr., at 918; *see generally id.* at 916-924.) In reviewing claimant's past medical history, the therapist noted "per client: spinal stenosis in back." (R. 10, tr., at 918.) Other than claimant's own report of that purported condition, the physical therapist did not cite to any medical evidence of record which would support McGeever's claimed condition. *Id.*

Although it is claimant's burden to show that her impairments are equal to or equivalent to a listed impairment, *Malone,* 2012 WL 5974463, at *1; *Ridge,* 232 F.Supp.2d at 788, the Commissioner asserts that, "throughout the record, Plaintiff's treating providers repeatedly noted no nerve-root tension signs." (R. 15-1, PageID #: 1276, citing MER.) The Commissioner cites instances of the same which are found in the ALJ's decision, R. 10, tr., at 17, citing "Ex. 10F/7" [936] and "Ex. 10F/19" [948], and *id.* at 20 ("physical examination notes indicate that she has routinely negative nerve root tension signs," as well as elsewhere in the MER; *see* R. 10, tr., at 749, 855, 882, 895.)

The court finds no merit in the claimant's argument that the ALJ erred at Step Three. Although the ALJ was not obligated to discuss Listing 1.04 because the claimant did not mention that Listing at the hearing before the ALJ, *Wilson,* 2015 WL 4385281, at *4; *Malone,* 2012 WL 5974463, at *2; *Tate,* 2018 WL 3417308, at *13 n.5; *Krull,* 2016 WL 8451412, at *10, the underlying decision reasonably considered the record and concluded that McGeever did not meet or equal the requirements of Listing 1.04. McGeever does not "point to specific evidence that demonstrates [she] reasonably could meet or equal every requirement of the listing." *Smith-Johnson,* 2014 WL 4400999, at *6. Rather, the pertinent evidence of record demonstrates that she did not satisfy each element of Listing

1.04. Absent such evidence, the ALJ does not commit reversible error when evaluating the Listing at Step Three. *Id.*

### B. Weight of Opinion Evidence
#### 1. State Agency Physicians

McGeever's second assignment of error contends the ALJ's evaluation of the opinion evidence is not supported by substantial evidence. (R. 14, PageID #: 1231.) Specifically, McGeever asserts that the ALJ erred in the 2017 decision when considering opinions from state agency physicians, rendered in 2015, because "she failed to acknowledge that she relies on reports of doctors who had never reviewed evidence of two cervical fusions, multiple rounds of injections and advancing lumbar and knee arthritis." *Id.* at PageID #: 1247. Simply put, she contends the reviewing doctors did not have access to the entire medical record. *Id.* In addition, claimant argues that the consultant physicians' opinions are inconsistent with objective imaging findings, the additional cervical fusion surgeries and knee injections. *Id.* at 1247-1248.

State agency doctors are considered highly-qualified experts in disability evaluation, and the ALJ must consider their evidence. 20 C.F.R. §§ 404.1513a(b)(1); 404.1527(e). There is no categorical requirement that a non-treating source's opinion be based on a complete case record; the opinion need only be "supported by evidence in the case record." *Helm v. Commissioner*, No. 10-5025, 2011 WL 13918, at *4 (6th Cir. Jan. 4, 2011) (quoting SSR 96-6p, 1996 WL 374180, at *2). However, when the ALJ relies on the opinions of non-examining sources who did not have access to later medical evidence, the Sixth Circuit requires "some indication" that the ALJ considered the later information before giving weight to an opinion that is not based on a review of the complete case record. *Blakley*, 581 F.3d at 409 (quoting *Fisk v. Astrue*, No. 06-4677, 2007 WL 3325869, at *6 (6th Cir. Nov. 9,

17

2007)); *see also* *Brooks v. Commissioner*, No. 11-5654, 2013 WL 4007764, at *6 (6th Cir. Aug.6, 2013) (same).

In this case, as noted above, McGeever applied for DIB benefits on March 10, 2015. (R. 10, tr., at 11, 338-344.) State agency medical consultant Dr. March completed a physical RFC assessment for McGeever on April 23, 2015. (R. 10, tr., at 267-269.) On reconsideration, state agency medical consultant Dr. Mikalov completed a physical RFC assessment on August 3, 2015.[4] (R. 10, tr., at 277-279.) The ALJ held the hearing on February 15, 2017, and issued the decision on June 15, 2017. (R. 10, tr., at 11-25, 236-262.) The record indicates that McGeever continued to receive medical treatment throughout the period of the administrative proceedings.

In the decision, the ALJ assigned "significant weight" to the opinions of Dr. March and Dr. Mikalov because they "had the opportunity to review the available medical records and to consider all the relevant factors when making [their] determinations." (R. 10, tr., at 22.) The ALJ continued:

> Most importantly, their opinions are consistent with the preponderance of evidence of record, accommodating the claimant's continued neck pain, knee impairments and lumbar spine degenerative disc disease (Ex. 12F/1; 12F/6; 13F/2; 13F/7; 16F/37; 18F/3). Yet, the opinion appropriately weighs the counterbalancing clinical findings demonstrating the claimant's normal strength, sensation and reflexes in the claimant's lower extremities, her four out of five right upper extremity strength, and her ability to ambulate without the need for assistive devices (*See e.g.*, Ex. 4F/21; 6F/73; 10F/7;

---

[4] As set forth in the relevant medical evidence above, Dr. Mikalov rendered the August 2015 opinion after plaintiff's June 2015 surgery that included a posterior C4-5 laminectomy, posterior C3-C6 fusion instrumentation, and local autograft Stryker implant, with no complications. *Id.* at 764, 766. It is not apparent from the administrative record that claimant provided these surgical records to the Agency on reconsideration. *See generally* R. 10, PageID #: 274. However, the ALJ's decision indicates that she considered the pertinent medical evidence, including the records before and after Dr. Mikalov's opinion. *See infra*.

10F/27; 10F/24; 10F/44; 14F/12; 16F/19).  The opinion is also consistent with
the claimant's activities of daily living (Claimant's Hearing Testimony).
Accordingly the undersigned assigns great weight to these opinions.  With
regard to the difference in these two opinions, the undersigned gives greater
weight to Dr. Mikalov's opinion that the claimant could only frequently push
and pull with the upper right extremity.  This opinion is most consistent with
the clinical findings demonstrating diminished strength in the claimant's
right upper extremity and more appropriately accommodates the claimant's
reports of reduced range of motion and weakness in her right arm.

(R. 10, tr., at 22.)  All of the medical records cited by the ALJ in the above quotation, with

one exception ("Ex. 4F/21," that is, R. 10, tr., at 774, post-surgical record dated June 21,

2015), date from after Dr. Mikalov's August 2015 opinion, and range from October 2015

through early December 2016.[5]  Thus, the ALJ reasonably considered more recent

information before giving weight to the opinions of the non-examining sources.  *Blakley*, 581

*F.3d at 409*.

## 2.  Treating Source Opinion

Although not designating it as a separate error (*see* R. 14, PageID #: 1247),

McGeever also argues that the ALJ erred when considering "the opinions of Ms. McGeever's

treating medical provider," specifically, the medical source statement of Kelly Neiderhouse,

CNP, dated December 22, 2015.  (R. 14, PageID #: 1248-1249, citing R. 10, tr., at 927-928.)

The claimant states that, although Neiderhouse is not a physician, she is a certified nurse

practitioner who treats McGeever.  *Id.* at 1249.

An ALJ is required to evaluate all medical opinions, regardless of source, unless an

opinion is a treating source's opinion entitled to controlling weight.  *Smith v. Commissioner*,

---

[5] The ALJ's decision and discussion of the state agency medical consultant opinions and the
specific medical records cited therein demonstrates that she considered the pertinent 2015
and 2016 surgical records, post-surgical treatment records, and other subsequent, relevant
medical evidence, in rendering her decision.

482 F.3d 873, 875 (6th Cir. 2007) (ALJ must evaluate each medical opinion in the record);
*Walton v. Commissioner*, 187 F.3d 639, 1999 WL 506979, at *2 (6th Cir. 1999) (TABLE, text in WESTLAW) (per curiam); 20 C.F.R. § 404.1527(c). Neiderhouse's medical source statement, however, is not entitled to any particular deference. Under the regulations that were in effect at the time that McGeever's claim was filed,[6] "medical opinions" are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §404.1527(a)(1). The regulations listed five categories of "acceptable medical sources." *See* 20 C.F.R. § 404.1513(a) (2016); *see also* SSR 06-3p. At the time of the relevant regulations, a nurse practitioner was not an "acceptable medical source," but was considered an "other source." *McNamara v. Commissioner*, No. 15-1231, 2015 WL 8479642, at *1 (6th Cir. Dec. 10, 2015) (per curiam) (citing 20 C.F.R. § 416.913(d)(1)); SSR 06-3p, 2006 WL 2329939, at *2; *see also Noto v. Commissioner*, No. 15-1309, 2015 WL 7253050 at *4 (6th Cir. Nov. 16, 2015).

Because a nurse practitioner is not considered an "acceptable medical source" under the pertinent regulations, an ALJ is not required to give any special deference to statements from a nurse practitioner. *Noto*, 2015 WL 7253050, at *4 (citing *Walters*, 127 F.3d at 530; *Engebrecht v. Commissioner*, 572 Fed.Appx. 392, 397-398 (6th Cir. 2014)); *Cruse v. Commissioner*, 502 F.3d 532, 541 (6th Cir. 2007). The ALJ, however, has

---

[6] Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017. 82 *Fed. Reg.* 5844-5884 (Jan. 18, 2017). Although the ALJ's decision was issued after that date, plaintiff's claim was filed before March 27, 2017, and thus 20 C.F.R. §404.1527 (2017) ("Evaluating opinion evidence for claims filed before March 27, 2017") and related sections are the relevant regulations.

discretion to assign the information any weight she determines appropriate based on the evidence of record. *Id.* The claimant argues that the ALJ gave partial weight to some of Neiderhouse's findings, but little weight to others "on the basis that Ms. Neiderhouse is not an acceptable medical source." (R. 14, PageID #: 1249.) She contends that this is "not an adequate basis for discounting the report of the treating provider," and claims that the ALJ's determination is contrary to 20 C.F.R. 404.1527, the treating physician rule, and "the overall perspective of looking at medical evidence in light of the evolving and very real changes to how people get treatment." *Id.* at 1249-1250.[7]

Despite the McGeever's assertion, the ALJ does not have a heightened duty of articulation when evaluating other source opinions, although the ALJ must have considered those opinions. *Hatley v. Commissioner*, No. 1:13CV1189, 2014 WL 3670078, at *9 (N.D. Ohio July 22, 2014) (citing *Clark ex rel. S.R.C. v. Commissioner*, No. 5:12CV1745, 2013 WL 3007154, at *12 (N.D. Ohio June 11, 2013)). Here, the ALJ sufficiently evaluated N.P. Neiderhouse's opinions under 20 C.F.R. 404.1527(c), as set forth herein.

---

[7] McGeever also cites to S.S.R. 06-03p, for the proposition that "medical sources who are not 'acceptable medical sources,' such as nurse practitioners…have increasingly assumed a greater percentage of treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." (R. 14, PageID #: 1249.) Although a Social Security Ruling does not have the force of law, it is binding within the Social Security Administration as a statement of policy and interpretation that the S.S.A. has adopted. 20 C.F.R. § 402.35(b)(1). Courts generally accord SSRs deference unless plainly erroneous or inconsistent with the regulations. *Wilson*, 378 F.3d at 549; *see also Genier v. Astrue*, No. 07-1727-CV, 2008 WL 4820509, at *4 (2d Cir. Nov. 5, 2008) (quoting *Gordon v. Shalala*, 55 F.3d 101, 105 (2d Cir. 1995)) (same); *Salamalekis v. Commissioner*, 221 F.3d 828, 832 (6th Cir. 2000) (no deference due where SSR contradicts plain language of statute).

In addition, the "treating physician rule" does not apply to a nurse practitioner, who is not an acceptable medical source under the regulations. 20 C.F.R. § 404.1513(a) (2016); *see also* SSR 06-3p, 2006 WL 2329939, at *2. Nevertheless, while information from other sources cannot establish the existence of an impairment, "the information may provide insight into the severity of the impairment," and how it affects the individual's ability to function. SSR 06-3p, 2006 WL 2329939, at *2-*3; *Cruse,* 502 F.3d at 541. Opinions from "other sources" who have seen the claimant in a professional capacity should be evaluated by considering how long the source has known the claimant, how consistent the source's opinion is with other evidence, whether the source provides relevant evidence supporting the opinion, and how well the source's opinion is explained. *Cruse,* 502 F.3d at 541; SSR 06-3p, 2006 WL 2329939, at *4-*5; *see also* 20 C.F.R. 404.1527(c).

In assessing Neiderhouse's opinion, the ALJ discussed, among other factors, her medical source statements, the fact that she had a treating relationship with McGeever, and support in the record for Neiderhouse's "general opinion that the claimant would have postural limitations" and should be limited in pushing, pulling, and reaching, which was consistent with radiological imaging and clinical findings. (R. 10, tr., at 21-22.) On that basis, the ALJ assigned some weight to Neiderhouse's opinion in those areas. *Id.* The ALJ, however, assigned greater weight to the state agency medical consultant's opinions on the same issues, not simply for the reason (as argued by claimant, R. 14, PageID #: 1249) that Neiderhouse is not an acceptable medical source, but also "because their opinion is most consistent with the objective medical evidence." *Id.* at 22. The ALJ assigned little weight to the remainder of Neiderhouse's opinion, finding her assessments to be inconsistent with the medical record. *Id.*

The court finds that the ALJ's assessment of the opinion evidence in question is supported by substantial evidence, and accords with the relevant regulations concerning the evaluation of opinion evidence. *See generally* 20 C.F.R. § 416.927(c); SSR 06-3p. Plaintiff's argument to the contrary is not persuasive.

## C. RFC Assessment

The third assignment of error is whether the ALJ's residual functional capacity assessment is supported by substantial evidence. (R. 14, PageID #: 1231, 1250-1253.) The claimant argues that the ALJ's RFC determination that McGeever could stand and walk for up to six hours a day, despite her impairments, is not supported by the medical evidence of record. *Id.* at 1251. McGeever contends that the ALJ "failed to give good reasons" for discounting the substantial evidence of the limitations caused by her impairments, as well as minimizing and distorting her hearing testimony to find she is capable of light work. *Id.* at 1251-1253.

The claimant's RFC identifies what the claimant can still do despite her limitations. *Bowman v. Commissioner*, 683 Fed. Appx 367, 371 (6th Cir. 2017); 20 C.F.R. § 404.1545(a)(1). The ALJ has the responsibility for reviewing all the evidence in making this determination, and evaluates every medical opinion received in evidence. 20 C.F.R. §§ 404.1527(c), (e)(2). Although the ALJ reviews and considers all the evidence before her, the responsibility for assessing the claimant's residual functional capacity rests with the ALJ. 20 C.F.R. § 404.1546(c). This decision is an administrative, not a medical, determination. *Lumpkin v. Colvin*, 112 F. Supp. 3d 1169, 1172 (D. Colo. 2015). "The ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the evidence and draw

his own inferences." *Simpson v. Commissioner*, No. 08-3651, 2009 WL 2628355, at *12 (6th Cir. Aug. 27, 2009); *see also Lumpkin*, 112 F. Supp. 3d at 1172.

Although McGeever contends that the evidence of record does not support a determination that she could stand and walk for up to six hours a day or capable of light work, she does not cite to specific record evidence to support her argument beyond mere reference to her medical conditions and treatment history. *See generally* R. 14, PageID #: 1251. Earlier in her brief, McGeever notes CNP Neiderhouse's medical source statement found claimant is limited to standing and walking for "8 min. total at a time." (R. 14, PageID #: 1241, citing R. 10, tr., at 927.) The ALJ assigned little weight to this portion of Neiderhouse's opinion, as discussed above, because it was inconsistent with the following: evidence of claimant's ability to walk without the need for an assistive device; findings of normal strength, sensation, and reflexes in her legs; her conservative treatment history of knee and lumbar spine impairments; and the evidence that pain medications provide relief. (R. 10, tr., at 22, citing MER.)

The larger part of claimant's argument, however, contests the ALJ's decision to discount claimant's hearing testimony regarding the extent of limits on her activities of daily living. (R. 14, PageID #: 1251-1253.) It is the ALJ's role, and not this court's, to evaluate the credibility of the claimant. *Rogers v. Commissioner*, 486 F.3d 234, 247 (6th Cir. 2007). An ALJ's findings based on the credibility of the claimant are accorded great weight and deference, particularly since the ALJ observes a witness's demeanor and credibility. *Walters*, 127 F.3d at 531 (citing *Villarreal v. Secretary, HHS*, 818 F.2d 461, 463 (6th Cir. 1987)); *Gonzalez v. Commissioner*, No. 1:06CV687, 2008 WL 584927, at *5 (W.D. Mich. Jan. 17, 2008). Nevertheless, an ALJ's assessment of a claimant's credibility must be

supported by substantial evidence and based on a consideration of the entire record.

*Rogers*, 486 F.3d at 247; *Walters*, 127 F.3d at 531; *Gonzalez*, 2008 WL 584927, at *5.

After reviewing the objective medical evidence, the ALJ found that the evidence was most consistent with a limitation to a reduced range of light work. (R. 10, tr., at 20.) The ALJ also determined that, beyond the objective medical evidence, claimant's activities of daily living revealed a higher level of functioning than claimant alleged. *Id.* at 20-21. McGeever points to evidence that she asserts could support a contrary conclusion to the ALJ's determination. (R. 14, PageID #: 1252.) The issue, however, is not whether there is evidence to support a ruling different than that reached by the ALJ. *Lebro ex rel. R.L. v. Commissioner*, No. 1:13CV1355, 2014 WL 3749221, at *11 (N.D. Ohio July 29, 2014). The Commissioner's determination must stand if supported by substantial evidence, regardless of whether some evidence might support another conclusion. *See Kidd v. Commissioner*, No. 99-6481, 2001 WL 345787, at *3 (6th Cir. Mar. 27, 2001); *Martin ex rel. Martin v. Chater*, 91 F.3d 144, 1996 WL 428403, at *4 (6th Cir. 1996) (TABLE, text in WESTLAW) (per curiam); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). The court finds that the ALJ's RFC and credibility determination are supported by substantial evidence, set forth in the decision.

### D. Fibromyalgia

The fourth assignment of error alleges that the ALJ improperly found that claimant's fibromyalgia was not a severe impairment; and, thus, failed to properly account for the pain caused by this condition in the RFC finding. (R. 14, PageID #: 1231, 1253.)

The Sixth Circuit has recognized that fibromyalgia can be a severe impairment. *Davila v. Commissioner*, 993 F. Supp.2d 737, 754 (N.D. Ohio 2014) (citing *Rogers*, 486 F.3d

at 243).  Because of the nature of fibromyalgia, application of the usual disability analysis is challenging.  *Swain v. Commissioner*, 297 F. Supp.2d 986, 990 (N.D. Ohio 2003).  Unlike many medical conditions, fibromyalgia is not amenable to objective diagnosis, and standard clinical tests may not be relevant to diagnosing or assessing fibromyalgia.  *Davila*, 993 F. Supp.2d at 755.

Nonetheless, "the mere diagnosis of an impairment says nothing about the severity of that impairment."  *Kutscher v. Commissioner*, No. 1:13CV1389, 2014 WL 3895220, at *13 (N.D. Ohio Aug. 8, 2014) (citing *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988)).  A diagnosis of fibromyalgia is not equivalent to a finding of disability, or an entitlement to disability benefits.  *Stankoski v. Astrue*, No. 12-4227, 2013 WL 4045974, at *4 (6th Cir. Aug. 12, 2013) (citing *Vance v. Commissioner*, No. 07-5793, 2008 WL 162942, at *4 (6th Cir. Jan. 15, 2008)); *Sarchet v. Chater*, 78 F.3d 305, 307 (6th Cir. 1996); *see also Bartyzel v. Commissioner*, 74 Fed.Appx. 515, 527 (6th Cir. 2003).

Social Security Ruling (SSR) 12-2p describes criteria for evaluating whether a person has a medically determinable impairment of fibromyalgia.  *Luukkonen v. Commissioner*, No. 15-1561, 2016 WL 3426370, at *4-*5 (6th Cir. June 22, 2016).  Under SSR 12-2p, a person has fibromyalgia if: (1) there is a history of widespread pain, in all quadrants of the body, that has persisted for at least 3 months (the pain may fluctuate in intensity and may not always be present); (2) at least 11 of 18 possible positive tender points are found on physical examination; and (3) there is evidence that other disorders were excluded as possible causes of the pain.  SSR 12-2p, 2012 WL 3104869, at *2-*3.  The claimant must meet all three of these elements to have a medically determinable impairment of fibromyalgia.  SSR 12-2p, 2012 WL 3104869, at *2.

26

Here, at Step Two, the ALJ determined that the medical evidence of record showed that McGeever had severe impairments of osteoarthritis and allied disorders, obesity, degenerative disc disease, peripheral neuropathy, and dysfunction of major joints. (R. 10, tr., at 13.) The ALJ noted that the claimant had been diagnosed with fibromyalgia (R. 10, tr., at 14, citing tr., at 956, 1028), but after reviewing the criteria in SSR 12-2p concluded that: "The claimant's medical records fail to satisfy the above criteria." (R. 10, tr., at 14.) Therefore, the ALJ determined that claimant's fibromyalgia is a non-medically determinable impairment. *Id.*

The claimant contends that the ALJ improperly found that her fibromyalgia was not a severe impairment. (R. 14, PageID #: 1253.) In support, McGeever cites to a January 19, 2016, visit to rheumatologist Margaret Tsai, M.D., which was also cited by the ALJ.[8] (R. 14, PageID #: 1253; R. 10, tr., at 14, 953-958.) Dr. Tsai indicated that McGeever had been referred to her for a rheumatologic evaluation of her overall pain problems. (R. 10, tr., at 953.) The claimant reported that medications were giving her more function and less pain. *Id.* Overall, she was "doing ok and happy with care." *Id.* McGeever reported joint pain in her neck, shoulder, and pain in her upper and lower back. *Id.* at 954. The rheumatologist noted CT scan results that indicated degenerative disc disease. *Id.* at 955. On physical examination, there was tenderness in the cervical spine, shoulders and knees. *Id.* The doctor found 16/18 tender points.[9] *Id.* at 955; *see also* tr., at 792.

---

[8] McGeever cites as well to an earlier November 4, 2015, visit to Dr. Tsai, at which time the doctor noted similar symptoms, and reached a substantively identical diagnosis. (R. 10, tr., at 788-795.)

[9] The claimant's reference to satisfying the "tender points" criterion (R. 14, PageID #: 1253) indicates that claimant's argument is that she satisfies the Section II.A. criteria of SSR 12-2p. *See generally* SSR 12-2p, 2012 WL 3104869, at *2-*3.

Dr. Tsai's diagnosed secondary osteoarthritis of multiple sites, cervical spondylosis with myelopathy, cervicalgia, postlaminectomy syndrome, bilateral knee pain, fibromyalgia, right shoulder pain, and idiopathic peripheral neuropathy. (R. 10, tr., at 956; *see also* tr., at 792-793.) The doctor's treatment plan included over-the-counter arthritis creams, acetaminophen, decrease stress and improve sleep, prednisone, and 30 minutes of exercise (such as walking, dancing, low impact aerobics, and stair climbing) three times a week. *Id.* at 956-957.

McGeever must demonstrate all three of the SSR 12-2p elements to have a medically determinable impairment of fibromyalgia. SSR 12-2p, 2012 WL 3104869, at *2. Although Dr. Tsai's records satisfy the first two elements, there is no indication therein that the doctor excluded claimant's other disorders (such as her diagnosed osteoarthritis, cervical spondylosis with myelopathy, or cervicalgia) as possible causes of her symptoms, *see* SSR 12-2p, 2012 WL 3104869, at *3; *Davila*, 993 F. Supp.2d at 754, and McGeever points to no other evidence of the same. The court, therefore, cannot find that the ALJ erred in finding claimant's fibromyalgia was not a severe impairment.


## VIII.  CONCLUSION

The ALJ's decision is supported by substantial evidence because the record evidence discussed therein is such that a reasonable mind might accept as adequate support for the Commissioner's final benefits determination. Therefore, the Commissioner's final decision is affirmed for the aforementioned reasons.

Date:  <u>March 29, 2019</u>                    s/ David A. Ruiz
                                               David A. Ruiz
                                               United States Magistrate Judge